MALON E. BRANDE & another *vs.* JAMES J. GRACE
& another.

Suffolk. March 20, 23, 1891. — June 27, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Landlord and Tenant — Lease — Implied Grant — Mandatory Injunction —*
*Damages.*

A sublease of premises for business purposes was of front rooms, "with all the
rights and privileges thereto belonging," situated in the second story of a build-
ing set back a few feet from the line of a city street, the land between the building
and the street being used as a part of the sidewalk, but never dedicated to the
public. A subsequent lessee of the entire premises for a number of years pro-
posed to alter the building by extending the side walls to the street line and
erecting a new front wall, so as' to enclose the original front rooms and to inter-
pose another room between them and the street; and the sublessee sought in
equity to prevent the same. An injunction was refused at the hearing, and the
lessee made the alterations, completing them a few months before the sublease
would expire. *Held,* that the alterations were inconsistent with the sublessee's
rights under his lease. *Held, also,* that, under the circumstances, no injunction
should issue, but that the sublessee's remedy should be confined to damages.

BILL IN EQUITY, filed in the Superior Court on August 30,
1890, against James J. Grace and the American Protective
League, to prevent the defendants from altering a building.
The case was heard by *Mason,* J., and reported for the deter-
mination of this court, and was as follows.

The plaintiffs composed the firm of Brande and Soule, den-
tists ; and the defendant Grace was the lessee of premises num-
bered 181 Tremont Street, in Boston, which included a six-story
building set back from twelve to fourteen feet from the sidewalk
of that street. The unoccupied land between the building and
the street was included in his lease, and was used as a part of the
sidewalk, but had never been dedicated to the public. On or
about February 1, 1888, Grace executed a sublease, with a cove-
nant therein for quiet enjoyment of a portion of the building,
described as "the rooms numbered 1, 2, 3, and 4, located on the
second floor of building numbered 181, and located on Tremont
Street in said Boston, with all the rights and privileges thereto
belonging, . . . from the first day of March, A. D. 1888, during
the following term of four years (4) thence next ensuing, expir-

ing February 29, A. D. 1892." These rooms included the front rooms on that story, and from them an uninterrupted outlook was to be had into the street. The plaintiffs, who were already in occupation of the rooms as tenants of Grace, continued thenceforward to occupy the rooms, and to do a profitable business in dentistry there, and allowed their signs attached to the outside face of the front wall to remain there. Subsequently Grace sublet the entire premises to the American Protective League for a term of years, which corporation proceeded to alter the building by taking down the original front wall thereof, and by extending its side walls to the street line and erecting a new front wall to the entire height of the building, so as to enclose the rooms leased and occupied by the plaintiffs, and to interpose another room between them and the street. This bill was then brought by the plaintiffs to prevent such alterations from being made, and a temporary injunction was issued to prevent the defendants from taking down so much of the original front wall as enclosed the second story of the building. The plaintiffs then discontinued as to Grace, and filed a supplementary bill praying that the defendant corporation might be prevented from making its proposed alterations. At the hearing, the judge made a final decree that the injunction already issued should be continued to the end of the plaintiffs' tenancy, but ruled that the plaintiffs had acquired no right to the light and air which would be obstructed by the other proposed alterations, and refused an injunction to prevent the same. The defendant corporation thereupon proceeded to erect, and had completed the new front wall, and had extended the side walls of the building so as to unite with the same, thus cutting off the light and air from the plaintiffs' front rooms, and covering up their business signs upon the external surface of the original front wall.

*A. Russ,* (*D. A. Dorr* with him,) for the plaintiffs.

*R. M. Morse, Jr.,* (*J. M. Olmstead* with him,) for the defendant corporation.

ALLEN, J. The determination of this case depends upon the proper application of rules of law, which of themselves are simple. "The grant of anything carries an implication, that the grantee shall have all that is necessary to the enjoyment of the grant, so far as the grantor has power to give it." *Salisbury*

v. *Andrews*, 19 Pick. 250, 255. And in order to determine what is thus granted by implication, the existing circumstances, and the actual condition and situation of that which is granted, may be looked at. *Salisbury* v. *Andrews*, 19 Pick. 250, 255.

The premises leased to the plaintiffs were described as " the rooms numbered 1, 2, 3, and 4, located on the second floor of building numbered 181, and located on Tremont Street in said Boston, with all the rights and privileges thereto belonging." These rooms included all the front rooms in the second story of the building. The building was set back twelve or fourteen feet from the line of the street, and the space between the building and the line of the street had been used as a part of the sidewalk, but never dedicated to the public. The rooms were therefore front rooms, from which the view of the street was unobstructed. The plaintiffs hired the rooms for business purposes. The alterations which the defendants were proceeding to make would have the effect to interpose another room between the leased rooms and the street, and the plaintiffs' rooms would no longer be the front rooms of the building.

Alterations of this character are inconsistent with the rights of the plaintiffs under their lease. It could not have been understood at the time the lease was given that a right to make such alterations was reserved. It is not like the case of the erection of a building, either by a stranger or by the lessor, upon an adjoining lot, which is adapted to have a separate building erected upon it. In this case the lessor, or those holding his title, seek to make such changes in the building itself which contains the leased rooms as will essentially change their character. The subject of the lease is so materially changed that the rooms will no longer answer to the description of them in the lease, when the condition and situation of the premises are also looked at. The lease carries with it an implication that the lessor should not thus proceed to impair the character and value of the leased premises. *Salisbury* v. *Andrews*, 128 Mass. 336. *Doyle* v. *Lord*, 64 N. Y. 432.

We do not regard this view of the rights of the parties as at all inconsistent with the decision in *Keats* v. *Hugo*, 115 Mass. 204, and other cases, which hold or intimate that the necessity must be pretty plain in order to warrant the implication of a

grant.    In this case it is plain that the alterations are inconsistent with the rights of the plaintiffs under their lease.

Under this state of things the defendants might properly have been enjoined from proceeding with their proposed alterations. But the learned justice before whom the case was heard in the Superior Court took a different view of the rights of the parties, relying, it is said, upon *Keats* v. *Hugo*, 115 Mass. 204; and accordingly the plaintiffs' prayer for an injunction was refused. The defendants thereupon proceeded with the work, until now it is completed, so far at least as the external structure of the building is concerned.   The lease to the plaintiffs will expire on the last day of February next, and, if the defendants were now ordered to pull down their structure, they might then restore it. The rules under which mandatory injunctions have been issued for such a purpose should not be applied in a case like this. *Attorney General* v. *Algonquin Club*, 153 Mass. 447.   It would cause an unnecessary destruction of property.   In view of the early termination of the plaintiffs' lease, their remedy should now be confined to compensation in damages, to reimburse them for the injury which they have suffered.

*Decree accordingly.*