JAMES B. CASE & others *vs.* WILLIAM MINOT, JR. & others.

Suffolk.   January 19, 20, 1893. — April 4, 1893.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Landlord and Tenant — Implied Grant — Nuisance — Parties to a Suit in Equity — Amendment — Damages.*

The defendants were the owners of a large building, used for business purposes, extending north and south between two parallel streets, and having entrances and windows on both.   The plaintiffs, a firm of commission merchants, were the lessees of the second, third, fourth, and fifth floors of the east half of said building, each floor being lighted by windows in the ends, and by four windows in the east side, about midway between the two streets, opening into a rectangular light and air space or well twenty-seven and one half feet long by six and one half

feet wide on the defendants' land, which space had been made by setting back the wall of the building from the east side line of the lot; and owing to the existence of a similar set-back in the wall of the adjoining building, the distance from said side windows to the opposite wall was about seventeen feet. Each side window had two iron shutters, which opened out into the open space and swung back against the wall. The plaintiffs used that part of the second floor opposite the side windows for the exhibition and sale of goods. The lease contained no mention of the open space, and no covenants whatever on the part of the lessors; but, in order that the plaintiffs might have the full enjoyment of the premises as leased, it was necessary that they should have the full and undisturbed use of the side windows for light and air, and of the open space for opening and closing the shutters. Some months before the expiration of the plaintiffs' lease, the defendants leased the whole building, subject to two unexpired leases, one of which was the plaintiffs', to J. and J., giving them immediate possession of the basement with permission to erect therein a large electric light plant and to build a sufficient chimney in connection therewith. J. and J. at once proceeded to build said plant, and erected large wrought-iron pipes or chimneys in the open space above described. The noise and dust caused by the work greatly annoyed and injured the plaintiffs in their business, the pipes or chimneys prevented to some extent the opening of the iron shutters, and obstructed the light so as to interfere materially with their business, and the construction and operation of the electric plant seriously affected the plaintiffs' ability to get insurance on their goods. *Held*, in a suit in equity brought to enjoin the defendants from disturbing the plaintiffs, or permitting them to be disturbed, in the quiet enjoyment of the demised premises, that there was an implied grant or demise of a right to the light and air passing through the open space or well. *Held*, *also*, that the acts of J. and J. constituted a nuisance or substantial interruption of the plaintiffs' right to quiet enjoyment; but *quære* whether they amounted to an eviction.

If a landlord authorizes his tenant to do on the demised premises wrongful acts which injure another, and this result is the natural and probable consequence of the acts so authorized, the landlord is liable therefor.

The plaintiffs were the lessees of the four upper floors of the east half of a building owned by the defendants as trustees. The first floor of the building and the basement were leased to B. and T., under a lease which was not to expire until a year later than the plaintiffs'. Some seven months before the expiration of the plaintiffs' lease, the defendants, in order to enable themselves to make a lease of the whole building to J. and J. and give them possession of the basement, bargained with B. and T. to vacate the basement and accept other rooms in place of it, and to permit the enlargement of the chimney serving the engine-room. This agreement was put in writing, and, besides other considerations therefor connected with the use of the premises, it was stipulated that $10,000 should be paid to B. and T. in cash. On the same day the defendants executed a lease to J. and J. of the whole building then occupied in part by the plaintiffs and in part by B. and T., which lease expressly provided that the lessees took subject to the lease to B. and T. as modified by their said agreement, and to the lease to the plaintiffs. It also provided as follows: "Permission is granted for the lessees to put into the basement of the building boilers, dynamos, and other appurtenances sufficient to supply power light, heat, etc. to the neighboring buildings occupied by them, and to build a chimney of adequate size in connection therewith." A few days later J. and J. went into possession and proceeded to put in said electrical works, by the con-

struction of which the plaintiffs were injured. One of the defendants and their active trustee testified, in a suit in equity to enjoin the defendants from disturbing the plaintiffs or permitting them to be disturbed, that he could do nothing to stop the work except to say to J. and J. that he would be glad to have anything done to prevent annoyance, and in their answer the defendants averred that J. and J. were "regarding the terms and provisions" of their lease. *Held,* that the defendants had authorized the doing of the acts complained of. KNOWLTON & MORTON, JJ. dissented from that part of the opinion holding the defendants legally responsible for the erection of the chimney by J. and J.

When the objection of want of parties is taken by plea or answer to a bill in equity, the defendant must give the names of the necessary parties, especially when they are peculiarly within his knowledge.

If an injunction cannot properly be granted on a bill in equity without the addition of parties defendant, the court, even in the absence of proper pleadings, will take notice of the fact, and direct the cause to stand over in order that the necessary parties may be added.

When a plaintiff brings a bill in equity for equitable relief to which he is then entitled, and a reason for denying such relief afterwards arises pending the suit, the bill will not, for this cause, be dismissed, but will be retained for the assessment of damages.

BILL IN EQUITY, filed on August 16, 1892, by the plaintiffs as lessees, to restrain and enjoin the defendants, their landlords, from disturbing them or suffering them to be disturbed in the quiet enjoyment of the demised premises.

The plaintiffs were copartners, doing business under the name of Case, Dudley, and Battelle. The defendants William Minot, Jr., and four others, were the trustees of the Boston Real Estate Trust, of which the said Minot was the actuary. The bill prayed that an injunction might be issued restraining the defendants from further causing, making, permitting, or suffering the continuance of the annoyances complained of during the remainder of the plaintiffs' lease, and from permitting or causing the continuance of a structure hereinafter described, in so far as it obstructed the admission of light and air, to which the plaintiffs said they were entitled. The court refused to grant a preliminary injunction, and ordered the defendants to make immediate answer. The defendants thereupon filed a demurrer and answer. In their answer the defendants, after admitting or denying the allegations of the plaintiffs' bill, proceeded to state "that on or about the twentieth day of May, A. D. 1892, they made a lease in writing of the entire premises and building, a part of which the plaintiffs occupy, to one Jordan and another, which lease was expressly made subject to all the rights of the plaintiffs in the premises, and which lease gave to the lessees therein named,

subject as aforesaid, certain rights of repair, renewal, and re-modelling; that said lease is now in full force; that, as defendants are advised, their lessees are regarding the terms and provisions thereof; and that the defendants are directing, controlling, or doing no work in and about the premises whatever." The demurrer having been overruled, the case was heard on the merits before *Bond*, J., who dismissed the bill, and, at the request of the plaintiffs, reported the case for the consideration of the full court, substantially as follows.

The defendants owned a building in Boston, bounded southerly on Bedford Street and northerly on Avon Street. The easterly line of the lot was straight, and the face of the wall of the building on that side was built upon the line of the lot, except about midway between the two streets, where the wall was set back from the line of the lot so as to leave a rectangular space about six and one half feet wide by twenty-seven and one half feet long, wholly on the defendants' land. The wall of the adjoining building, as it then stood, had in it a corresponding jog or set-back, so that the distance between the walls of the two buildings where both were set back was about seventeen feet. The plaintiffs occupied the second, third, fourth, and fifth stories of the east half of the building under a written lease, which expired on December 31, 1892. The premises leased to the plaintiffs extended the whole length of the building from Avon to Bedford Streets, and had an entrance on each street. This lease contained no mention of the open space above described, and no express covenants whatever on the part of the lessors. In it, however, the lessees covenanted, among other things, that they would not make or allow " any unlawful, improper, or offensive use " of the premises that should be " injurious to any person or property, or liable to endanger or affect any insurance on said premises, or to increase the premium thereof," and that they would " conform to such rules and regulations as " might " from time to time be established by the lessors for the general convenience and safety of the tenants in the building." The lease was dated December 6, 1890, and at that time the building was a business or commercial one. The rooms on the floors leased to the plaintiffs were lighted at each end by windows overlooking Bedford and Avon Streets respectively, and also on the east side by windows opening into the light and air space

above referred to. There were four of these side windows on each floor, and they were furnished with iron shutters, two at each window, which opened out into the light and air space, and swung back against each other, or against the wall at the sides of the windows.

At the Bedford Street end of the second floor of the building, which was the first floor of the premises leased to the plaintiffs, were two offices, with sash partitions, which occupied that end for its whole width.

When the plaintiffs brought their bill they were, and for many years had been, commission merchants, doing an extensive business in the sale of goods consigned to them by various manufacturers, and they used the lowest floor of the premises leased to them, not only as a store-room, but as a sales-room. In making sales, it was necessary for them to have a well lighted place in which customers might examine goods, and the plaintiffs used that part of the second floor of the building directly in front of the side windows opening on the light and air space for that purpose. In order, therefore, that the plaintiffs might have the full enjoyment of the premises as they were when leased to them, it was necessary that they should have the full and undisturbed use of the side windows for light and air, and of the space without for opening and closing the iron shutters.

Underneath the premises leased to the plaintiffs were one floor and a basement which had been leased by the defendants to, and were occupied by, Bradford and Thomas, who also occupied the west half of the fourth and the west half of the fifth floor under the same lease, which had not expired on May 20, 1892, but was modified by an agreement in writing of that date. This agreement, entered into by Bradford and Thomas of the one part, and the defendants of the other part, provided that on or before June 3, 1892, Bradford and Thomas would vacate the basement, and accept in place thereof the two chambers then vacant on the west side of the building, in the second and third stories, and permit the enlargement of the chimney then serving the engine-room. In consideration therefor the trustees agreed to pay $10,000, to make certain improvements and repairs, to pay any advance in the rates of insurance caused thereby, and to give Bradford and Thomas a right to terminate their lease at any time upon sixty days' notice. This agreement was made

by the defendants in order that they might be able to make a lease of the whole building and estate, subject to the unexpired leases above referred to, to Eben D. Jordan and Eben D. Jordan, Jr., and at the same time give the Jordans possession of the basement.

The lease to the Jordans contained among others the following stipulations : " The lessees take subject to the lease to Case, Dudley, and Battelle, and to the lease to Bradford and Thomas, and to the agreement dated this day between the lessors and said Bradford and Thomas, the obligations of which the lessees hereunder assume and agree to carry out, except that the lessors are to furnish the cash bonus of $10,000. . . . Permission is granted for the lessees to put into the basement of the building boilers, dynamos, and other appurtenances sufficient to supply power, light, heat, etc. to the neighboring buildings occupied by them, and to build a chimney of adequate size in connection therewith." The term of the lease was eight years and seven months from June 1, 1892, but the instrument was not recorded. After June 1, 1892, when the Jordans went into possession, the defendants did not occupy the premises, or have any control of them, except as landlords. They did not employ any one to do the work upon the premises complained of in the plaintiffs' bill, or direct or authorize the doing of such work, unless the contrary is held to appear, constructively and as matter of law, upon the facts reported.

On June 1, 1892, the Jordans began, by their servants and agents, to place in said basement boilers and other apparatus designed for an electric light plant of a capacity of 250 arc lights, as specified in their said lease, and to erect wrought-iron pipes or chimneys in the light and air space into which the plaintiffs' side windows opened. The work went on during the summer, and at the time of the hearing, September 15, 1892, these pipes had been entirely finished.

By the construction of said electric plant, with its pipes or chimneys, the plaintiffs were greatly annoyed and injured in their business, and in the quiet enjoyment of the premises leased to them, by reason of the noise and dust caused by the work; and the light from the side windows was "substantially obstructed" by the pipes or chimneys, "so as to materially interfere" with the plaintiffs' business. The pipes or chimneys

obstructed the admission of light and air, not only by filling a large part of the open space, but also by interfering with the opening of the iron shutters. The extent of such interference was shown by means of a plan.

The report further stated that the work done by the Jordans had caused an increased expense to the plaintiffs in their insurance, to the extent of " mechanics' permits "; and that the operation of the electric plant introduced would prevent the plaintiffs from obtaining a proper amount of insurance on their goods, for the want of which the plaintiffs would not be able to carry on their business on the premises as before, and that such an amount of insurance as they could get must be obtained at an increased cost.

After the foregoing facts had appeared.in evidence, it further appeared that the plaintiffs had complained to the defendants, by letter, of the annoyance caused by the alterations aforesaid, in answer to which the defendant Minot had written, among other things, that he would do what he could. In respect to what he had actually done, the defendant Minot, having been called as a witness for the defendants, testified on cross-examination as follows: " I did nothing, except to go down, or send down, I have forgotten which; I communicated with Jordan and Jordan, and informed them with respect to this letter, and informed them that I would be glad to have anything done to prevent annoyance. That was all I could do." When asked if he saw what Jordan and Jordan were doing, he answered: " I saw in this way, — I did not go into the premises; I saw from the street what was going on." The following question was then asked :.." Whether or not you understand Jordan and Jordan are doing anything other or different than they are authorized to do under this lease ? " To this question the defendants objected, and it was excluded, subject to the plaintiffs' exception.

The report concluded as follows: " I find that the complainants brought said bill in good faith, believing it to be their proper remedy. But on the pleadings and the facts herein reported, being of the opinion and ruling that the plaintiffs were not entitled to any relief, either by way of injunction or damages, against the defendants, I entered judgment dismissing said bill, and report the case for the determination of the Supreme

Judicial Court; if the ruling was correct, the judgment is to be affirmed; if the plaintiffs are entitled to damages, the case is to be sent to a master for the assessment of the same; and if the plaintiffs are entitled to any other relief, the case is to be retained or remanded for further proceedings."

The case was argued at the bar in January, 1893, and afterwards was submitted on the briefs to all the judges, except *Holmes,* J.

*W. H. Leonard & C. H. Hanson,* for the plaintiffs.

*F. Rackemann, (F. V. Balch* with him,) for the defendants.

ALLEN, J. The court ruled that on the pleadings and facts reported the plaintiffs were not entitled to any relief, either by way of injunction or damages, against the defendants, and therefore dismissed the bill. The particular ground is not stated, but from the terms of the report and the course of the argument we are led to infer that it was thought that the plaintiffs should have sought their remedy against the Jordans alone, through whose immediate agency the acts complained of were done, and that the present defendants are not responsible therefor. However, we have to consider the whole case.

1. It could not properly be held on the facts reported, that, as matter of law, the plaintiffs were not entitled to any relief against anybody. It is true that the description of the premises demised to the plaintiffs contained no express mention of the well or open space for light and air, and the lease contained no express covenants on the part of the lessors. But the situation and habitual use of the demised premises were such as to warrant, if not to require, the finding of an implied grant of a right to light and air from the open space, or at least from that portion of it owned by the defendants. It is true that the doctrine of implied grants of easements or privileges connected with real estate is applied with some strictness in this Commonwealth; but in this case it might well be found, as it was found, that the right to light and air was necessary to the beneficial enjoyment of the demised premises. The open space was not accessible from the street. Its sole use, so far as the lessors were concerned, was for the benefit of the occupants of their building, and it must have been intended that the plaintiffs should have the benefit of it. There is no other reasonable view to be taken of the facts. The case of *Doyle* v. *Lord,* 64 N. Y. 432, much

resembles the present, and fully sustains the plaintiffs' contention on this point; and the general doctrine that there is an implied grant of whatever is necessary to the beneficial enjoyment of the thing granted is familiar. *Salisbury* v. *Andrews,* 19 Pick. 250. *Thayer* v. *Payne,* 2 Cush. 327, 331. *Pettingill* v. *Porter,* 8 Allen, 1, 6, 7. *White* v. *Chapin,* 12 Allen, 516. *Oliver* v. *Pitman,* 98 Mass. 46, 50. *Buss* v. *Dyer,* 125 Mass. 287. *Hooper* v. *Farnsworth,* 128 Mass. 487. *Johnson* v. *Knapp,* 146 Mass. 70, and 150 Mass. 267. *Brande* v. *Grace,* 154 Mass. 210. Taylor, Land. & Ten. (8th ed.) § 161. 2 Washb. Real Prop. (5th ed.) 29, 30, 37, 38. Without undertaking to define what may, in all cases, be included as necessary, it is enough to say that, on the facts reported, light and air from this open space might well be found to be necessary.

That being so, the facts reported are sufficient to show, or at least to warrant, a finding of a nuisance, or a substantial interruption of the plaintiffs' right to quiet enjoyment of the premises; *Fuller* v. *Ruby,* 10 Gray, 285, 290; *Sanderson* v. *Mayor, &c. of Berwick-upon-Tweed,* 13 Q. B. D. 547; *Jenkins* v. *Jackson,* 40 Ch. D. 71; *Robinson* v. *Kilvert,* 41 Ch. D. 88, 97; Taylor, Land. & Ten. (8th ed.) §§ 305, 309, 380; though perhaps not of an eviction; as to which see *Royce* v. *Guggenheim,* 106 Mass. 201; *Bartlett* v. *Farrington,* 120 Mass. 284; *Brown* v. *Holyoke Water Power Co.* 152 Mass. 463; *Brande* v. *Grace,* 154 Mass. 210; *Upton* v. *Townend,* 17 C. B. 30.

2. Assuming that the plaintiffs had a right to relief against somebody, it could not properly be held on the facts reported that they were not so entitled as against these defendants. This is the point on which most stress has been laid in the argument for the defendants. A brief recital of facts may be made. The plaintiffs' lease would not expire till December 31, 1892. In it they covenanted to make no use of the premises that should be injurious to any person or property, or liable to affect any insurance on the premises or to increase the premium thereof, and to conform to such rules and regulations as might from time to time be established by the lessors for the general convenience and safety of the tenants in the building; but the lessors entered into no express covenants. At the time the plaintiffs took their lease, which covered the second, third,

fourth, and fifth stories of the east half of the building, Bradford and Thomas held a lease of the store and basement under the plaintiffs, which would run for a year longer than the lease to the plaintiffs, and which contained provisions identical with or similar to those in the plaintiffs' lease; and they covenanted not to make any alterations or additions during their term without the written consent of the lessors. On the 20th of May, 1892, the defendants, in order to enable themselves to make another lease, which should include said basement, to the Jordans, and to give possession thereof to the Jordans, bargained with Bradford and Thomas to vacate the same and to accept other rooms in place thereof, and to permit the enlargement of the chimney then serving the engine-room; the expressed consideration therefor being ten thousand dollars, to be paid to Bradford and Thomas in cash, besides certain other considerations connected with the use of the premises. On the same day the defendants executed a lease to the Jordans of the whole premises then occupied in part by Bradford and Thomas and in part by the plaintiffs, with these provisions amongst others : " The lessees take subject to the lease to Case, Dudley, and Battelle [the plaintiffs], and to the lease to Bradford and Thomas, and to the agreement dated this day between the lessors and said Bradford and Thomas. . . . Permission is granted for the lessees to put into the basement of the building boilers, dynamos, and other appurtenances sufficient to supply power, light, heat, etc. to the neighboring buildings occupied by them, and to build a chimney of adequate size in connection therewith." The Jordans went into possession on June 1, 1892, and proceeded to put in electrical works under the permission contained in their lease. There is nothing in the facts reported to show that in putting in these works the Jordans made any more disturbance of, or interference with, the plaintiffs than was necessarily incident to the doing of such work, or that in any respect they exceeded the permission granted to them by the defendants. The contrary is to be assumed. Mr. Minot, one of the defendants and their active trustee, testified that he could do nothing to stop the work, except to say to the Jordans that he would be glad to have anything done to prevent annoyance. The defendants objected to his being asked if the Jordans were

doing anything other than or different from what they were authorized to do under the lease, and the question was excluded. Moreover, in their answer the defendants aver that the Jordans " are regarding the terms and provisions " of their lease.

Upon these facts it might well have been found that the defendants sanctioned and authorized whatever the Jordans did, and were answerable for it. They gave express permission; and they did it for a consideration. They bought off Bradford and Thomas for the very purpose of letting the premises to the Jordans, with this permission. The effect was to injure the plaintiffs. This result was the natural and probable consequence of what the defendants permitted to be done. It was a result which they must have contemplated from the outset. A jury upon these facts would not only be well warranted in finding that the defendants were responsible to the plaintiffs, but that view seems to be most in accordance with the facts. The decision in the well considered case of *Upton* v. *Townend*, 17 C. B. 30, 66, 71, 72, is closely applicable on this point. See also *Lufkin* v. *Zane*, 157 Mass. 117; *Fish* v. *Dodge*, 4 Den. 311, 317.

3. The defendants raise the further objection that the Jordans are not parties to the suit, and that it became apparent during the trial that they were the persons actually causing and doing the things complained of by the plaintiffs. So far as this ground of defence is set up in the answer, it is found in the averment that the defendants made a lease " to one Jordan and another, which lease was expressly made subject to all the rights of the plaintiffs in the premises, and which lease gave to the lessees therein named, subject as aforesaid, certain rights of repair, renewal, and remodelling; that said lease is now in full force; that, as defendants are advised, their lessees are regarding the terms and provisions thereof; and that the defendants are directing, controlling, or doing no work in or about the premises whatever." This ground of defence seems to be stated in the answer rather by way of exoneration of the defendants than as pleading the want of parties. When the defendants say that they made a lease " to one Jordan and another," it cannot be supposed that they thereby meant to suggest that the plaintiffs must make " one Jordan and another " parties defendant. The

objection of want of parties, when taken by plea or answer, should give the names of the necessary parties where this can be done, and especially where it is peculiarly within the knowledge of the defendants. Story, Eq. Pl. §§ 236, 238, 543. But, waiving the discussion of technicalities, let it be assumed that no injunction could properly be granted without making the Jordans parties. The only result is, that the court would, even in the absence of proper pleadings, take notice of the fact, and direct the cause to stand over, in order that the new parties might be added. *Schwoerer* v. *Boylston Market Association*, 99 Mass. 285, 295. Story, Eq. Pl. §§ 236, 238. 1 Dan. Ch. Pl. & Pr. (4th Am. ed.) 292. The bill was not dismissed upon this ground, but upon the ground that the plaintiffs were not entitled to any relief, either by way of injunction or damages, against the defendants. The Jordans might have been made parties by an amendment, and might be now if an injunction were still sought. But the time has passed when an injunction could properly be issued, and the only question remaining is whether relief by way of damages should be given. So far as this form of relief is concerned, the Jordans are not necessary parties. They have entered into no implied covenant for quiet enjoyment with the plaintiffs. If in any aspect the plaintiffs could maintain a claim for damages against them, certainly they are not joint contractors with the defendants, and if the defendants are liable in damages there is no rule requiring the Jordans to be joined in a suit to recover such damages. The objection of want of parties is therefore unavailing in the present posture of the case.

4. The only remaining question is whether relief should be granted against the defendants by way of damages. It was held in *Milkman* v. *Ordway*, 106 Mass. 232, that where a plaintiff in good faith brings a suit seeking equitable relief, supposing, and having reason to suppose, himself entitled to such equitable relief, even though at the time when the bill was brought he had no right to relief purely equitable, yet the court will afford relief by awarding compensation ; *a fortiori,* if the reason for denying the purely equitable relief occurs pending the suit. In the present case, provided in other respects the plaintiffs make out their case, the only reason for not granting an injunction

is that, pending the suit, the plaintiffs' lease has expired. The plaintiffs should not for this reason be turned out of court, but the bill should be retained for the assessment of damages. *Woodbury* v. *Marblehead Water Co.* 145 Mass. 509. *Brande* v. *Grace*, 154 Mass. 210. St. 1887, c. 383.

*Case remanded for further proceedings.*

Justices KNOWLTON and MORTON dissent from that part of the foregoing opinion which holds the defendants legally responsible for the erection of the chimney by Jordan and Jordan, for these reasons.

In their view the defendants are not shown to have had to do with the changes near the plaintiffs' premises, except as appears by their written contracts in regard to the property. They arranged with Bradford and Thomas so as to let Jordan and Jordan into possession much sooner than could have been done without the arrangement. They made a lease to Jordan and Jordan for eight years and seven months, and in the lease they gave permission to make the changes; but they expressly stated in the lease that " the lessees take subject to the lease to Case, Dudley, and Battelle," the plaintiffs. Without such permission Jordan and Jordan would have had no right as against the defendants to make the changes. With it they had and have a right as against the defendants. It cannot fairly be construed as authorizing the Jordans to create a nuisance, or to do anything that would interfere with the plaintiffs' rights as lessees. It amounted to a declaration on the part of the defendants that they gave no right as against the plaintiffs, and that Jordan and Jordan might make the changes after the expiration of the plaintiffs' lease, which then had less than eight months to run, but not before, unless they did it with the consent of the plaintiffs, or in such a way as not to affect the plaintiffs' legal rights.

It seems to the dissenting justices that with this construction full effect is given to the language of the contracts, in accordance with the intention of the parties, and that it is unjust to the defendants to charge them as having authorized the work to be done against the rights of the plaintiffs, and to make them pay damages for which, on the plaintiffs' theory, they can have no recovery against the real wrongdoers.