BOSTON VETERINARY HOSPITAL *vs.* JAMES KILEY.

Suffolk.   December 1, 1914. — December 30, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Landlord and Tenant,* Eviction.

If the lessee of a part of the ground floor of a building which is let to him "to use the same for a stable, and to make all repairs, except repairs to the roof," occupies that part of the building as a stable and keeps six or seven horses there, and if such lessee employs a plumber to repair a leak in a frozen water pipe and the repairs are done imperfectly so that the pipe still leaks, and the lessor turns off the water from the stable and refuses to allow the lessee to have any water for his horses from the other part of the building as the lessor could do with very little inconvenience to himself, and the lessee then hands to the lessor the rent which on that day is due in advance for the next month, and the lessor refuses to receive it, and thereupon the lessee, being denied the use of water for his horses, is obliged to move out and does so, it can be found on these facts, that the lessor by unjustifiably refusing to permit the lessee to have any water and afterwards by refusing to receive the rent gave the lessee the right to treat his acts as a constructive eviction, which right the lessee by yielding up possession had elected to exercise; and that accordingly the lessor cannot maintain an action to recover the rent which he had refused to accept.

CONTRACT by the Boston Veterinary Hospital, a corporation, against the lessee of a part of the ground floor of the plaintiff's

building at the corner of Plympton Street and Thorn Street in Boston, with a declaration containing two counts, the first for $50, being the amount of the rent for one month payable in advance, and the second on an account annexed for $3 for water furnished by the plaintiff to the defendant. Writ in the Municipal Court of the City of Boston dated January 19, 1914.

The defendant's answer as amended set up the defense of an eviction.

In the Municipal Court the case was tried before *Wentworth*, J. It appeared that the premises by the terms of the lease were let to the defendant "to use the same for a stable, and to make all repairs, except repairs to the roof." The facts reported by the judge were as follows:

"The leased premises consisted of a stable where the defendant kept six or seven horses. During the few days of exceeding cold weather, the water pipes in the stable froze so that the defendant was unable to obtain any water for his horses. The plaintiff claimed that it was the defendant's duty to repair the pipes and this did not appear to be disputed by the defendant, but in order to repair the pipes, the defendant had to go into the hospital part of the building, which was separate and apart from the stable leased by the defendant. The defendant sent a plumber into the hospital to do this repairing and as far as the defendant knew the repairs were properly done and he did not learn to the contrary until the next morning when he needed some water for his horses and found the water turned off. The plumber was not a licensed plumber and did not do a workmanlike job in this case and the pipes leaked to some extent after the repairs were completed. On account however of the very cold weather, it was a very busy time with plumbers and it was not easy to obtain one upon the instant. When the plaintiff's agent learned that the pipes still leaked, he ordered the water turned off from the leased premises.

"I find that the defendant would have been willing to repair the pipes in a workmanlike manner had he been approached in a courteous and gentlemanly way, but when the defendant asked to have the water turned on, the plaintiff's agent, not telling the defendant the pipes were not properly repaired, but in a very offensive manner, told him he could have no water until the pipes were repaired. The defendant stated that he had had them re-

paired and they both got into an angry controversy over the matter. The plaintiff's agent, however, refused to allow the defendant any water until these pipes were properly repaired, although it appeared that he could have been furnished with water without taking it from the leaking pipes and with but little inconvenience to the plaintiff. There was no way that the defendant could obtain water except from this main building, and I find as a fact that the plaintiff was not justified in refusing to permit the defendant to have water for his horses.

"The next day was the day when the rent became payable, and the defendant went to the plaintiff's agent and handed him $50 in cash for the rent and $3 for water. The plaintiff's agent said, 'You have broken the lease,' and refused to take the money. The defendant asked him how the lease was broken, and the plaintiff said, 'The pipes are leaking;' and the defendant said, 'I fixed those pipes. You are trying to beat me.' To this the plaintiff made no reply. The defendant did nothing further in reference to repairing the pipes in question. The exact amount due for the water was not known at this time by either party as it was metered service, but the defendant had during the term of his previous lease paid $3 the first of each month and when the value of the service was ascertained, it was adjusted by the defendant. There was no complaint made at this time that sufficient money was not tendered for this water, and I find as a fact that the rent was refused because the plaintiff's agent was annoyed because the water pipes had not been repaired in a proper manner. The defendant on the plaintiff's agent's statement that he had broken the lease, and not being permitted to have access to the water, was obliged to move out and did so. I find that the acts of the plaintiff in refusing to allow the defendant water were unjustifiable and constituted an eviction and the defendant is not liable for this rent."

The plaintiff asked the judge to make the following rulings:

"1. On all the evidence and as matter of law the defendant has shown no eviction by the plaintiff.

"2. If the court finds as a fact that the plumbing job was undertaken by Kiley, was not properly performed, and that the pipes leaked, the failure by the plaintiff to turn on the water did not constitute an eviction."

The judge refused to give the first ruling requested, and in regard to the second request found as a fact that the plumbing job was not performed properly, and added the following: "I decline to pass upon the specific fact whether or not the plaintiff's declination to turn on the water from a leaking pipe constituted an eviction, but I find as a fact that the plaintiff had full control of the water and that he would not permit the defendant to have any water, and that this constituted an eviction."

The judge found for the defendant, and at the request of the plaintiff reported the case under St. 1912, c. 649, § 8, for determination by the Appellate Division.

The Appellate Division made an order that the finding be reversed and that judgment be entered for the plaintiff in the sum of $53. The defendant appealed.

*W. R. Scharton & E. M. Shanley,* for the defendant, submitted a brief.

*C. T. Cottrell,* for the plaintiff.

DE COURCY, J. This action is for city water furnished and for rent payable in advance by the defendant lessee; and the defense is an eviction. Among the facts found by the judge of the Municipal Court are the following: The leased premises consisted of a stable wherein the defendant kept six or seven horses. During a few days of exceedingly cold weather the water froze in the pipes and caused them to leak; and the defendant, being unable to obtain any water for his horses, employed a plumber to repair the pipes. In order to do this work it was necessary for the plumber to go into the hospital part of the building, which was separate from the stable. Next morning, when the defendant needed some water for his horses, he found the supply cut off. This was done by the plaintiff's agent, without telling the defendant that the repairs were not done properly; and the agent informed him in an offensive manner that he could have no water until the pipes were repaired. There was no way that the defendant could obtain any except from the main building, and this would cause but little inconvenience to the plaintiff. The agent nevertheless refused to allow him to take any. It was difficult to secure the services of a plumber on account of the very cold weather. The judge further found that the defendant, being denied access to the water, was obliged to move out and did so; that the plaintiff had full control

of the water, and unjustifiably refused to permit the defendant to have any; and that this constituted an eviction.

We are of opinion that the trial judge was warranted in concluding that the plaintiff deprived the defendant of the enjoyment of the leased premises by rendering them unsuitable for the purposes for which they were hired. From the facts stated, and from the subsequent conduct of the landlord in refusing to accept rent, it well could be found that he intended that the tenant no longer should occupy the premises. And the tenant, notwithstanding his earlier offer to pay the rent, elected to regard the acts of the landlord as a constructive eviction, by yielding up possession within a reasonable time. *Nesson* v. *Adams,* 212 Mass. 429, and cases cited. *Smith* v. *Tennyson, ante,* 508. In principle the case is similar to that of constructive eviction of a tenant by a failure to furnish heat. See 37 L. R. A. (N. S.) 1217, note.

What we have said disposes of the requests for rulings, so far as material. The order of the Appellate Division must be reversed, and the original finding of the single judge affirmed.

*So ordered.*