MAYER S. GINSBURG, Appellant, *v.* F. W. WOOLWORTH & COMPANY, a Domestic Corporation, Respondent.

Second Department, July 31, 1917.

Landlord and tenant — suit by tenant to enjoin structural changes in building — denial of temporary injunction on condition that landlord furnish plaintiff access over stairway — right of tenant to recover damages for injuries to walls and ceilings — breach of covenant for quiet enjoyment.

Where a tenant of an upper room in a building, entitled under his lease to access by means of a stairway, sues to enjoin his landlord, when carrying out certain improvements in the building, from changing the location of the stairway to the alleged disadvantage of the plaintiff, and the tenant's motion for a temporary injunction has been denied and the denial sustained by the Appellate Division upon the condition that during the improvements the defendant shall give the plaintiff proper and adequate access to his premises, a court of equity on the completion of the improvements should not issue a mandatory injunction, for the work has been erected under the order of the court.

The stairway, over which the plaintiff had right of access in common with other occupants of the building, did not, under the lease, become a physical part of the demised premises.

However, where the defendant in making the improvements jacked up the building twenty-eight inches, with a result that the walls and ceilings of the plaintiff's premises which he had decorated at his own expense were cracked and injured and his free and convenient access was temporarily interrupted, he is entitled to recover damages for the lessor's breach of the covenant for quiet enjoyment, and the case will be remitted to the Special Term to assess the same.

APPEAL by the plaintiff, Mayer S. Ginsburg, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the

29th day of January, 1917, upon the decision of the court dismissing the complaint after a trial at the Westchester Special Term.

The action was brought to obtain an injunction and damages.

*David Goldstein,* for the appellant.

*Charles H. Tuttle* [*Martin A. Schenck* with him on the brief], for the respondent.

PUTNAM, J.:

The entire second floor of an old brick building at No. 262 Main street, New Rochelle, when owned by the New Rochelle Trust Company as guardian, was leased to plaintiff September 13, 1915, for a dental parlor, with certain terms of renewal for two years. The Woolworth Company, as tenant, had a retail store in the ground floor. Later, that company purchased this building, subject to plaintiff's lease. They then acquired the older frame building alongside — No. 260 — and planned to unite the lower floor of No. 262 with a new structure of No. 260, and make the buildings uniform in appearance. This involved shifting the stairway of twenty-one steps, leading up to plaintiff's rooms. Defendant had blueprints made showing these alterations, and, sometime in March or April, Mr. Surdam, the Woolworth manager, had a talk with plaintiff about moving the stairway. This resulted in an interview in New York between the parties, with Mr. Goldstein in attendance, one of plaintiff's attorneys. Mr. Goldstein asked as a condition $2,000, and a five-year renewal of plaintiff's lease, which was then at the rate of $480 a year.

Defendant's permit for these alterations was obtained on May twenty-third. Along in June defendant boarded up its old store, which it had vacated, but left this stairway to plaintiff's rooms open and undisturbed. The building No. 262 was raised twenty-eight inches, so as to take a new foundation. This required three new steps at the foot of the stairway.

Meantime defendant went on with the new structure, No. 260. When this had advanced, the defendant prepared to carry out its proposed removal of the stairway. Plaintiff,

on July 17, 1916, started this injunction suit to restrain interference with his entrance; also for recovery of $10,000 as damages. This motion was heard and denied by Justice J. ADDISON YOUNG on August 18, 1916, but his order was conditioned on defendant providing plaintiff at all times with proper and adequate access to his offices, and that defendant should give a bond for $2,000 to cover plaintiff's damages. On appeal, this was affirmed without passing on the merits. (176 App. Div. 882.)

After this disposition of the motion, defendant did shift the stairway. That is, it opened the new stairway in the new building, which was three and one-third feet wide in the clear, the ascent extending on up to the third story where it was lighted by a window or skylight at the head of the stairs, and took out the original stairway which had been but three feet in width, and had not been lighted. This new stairway was all completed before the old one was taken down. The new entrance was nineteen feet away from the original entrance, requiring a visitor or patient to go along a hallway to plaintiff's rooms. It does not appear how long a time these alterations took, except a general statement of about a couple of months. At the trial, December twentieth, the alterations were found to have been completed at a cost of $10,000.

On the trial the court found that as early as March, 1916, plaintiff had knowledge of the alterations and of the intended removal of the old stairway, saw the work begun in May, and waited till the middle of July (after defendant had spent more than $3,000 on improvements) before beginning this suit. The court also found that such alterations had caused no inconvenience or loss to plaintiff, as these alterations had not interfered with his beneficial enjoyment of the leased premises (Finding 9th). Indeed, that defendant's improvements substantially benefited the plaintiff, so that the rental value had been increased by such alterations. The complaint was dismissed on the merits.

Plaintiff requested the court to find that defendant raised the building " so carelessly, negligently and unskillfully, that the plaster wall and the stairs in said hallway leading to the plaintiff's offices became cracked and broken and put in a dilapidated condition, so as to be a menace to the life and

limb of the plaintiff and his patients, whenever they have occasion to use the same." (Request X.)

Request XI is in similar terms, but applies to the ceilings and walls of plaintiff's offices.

Both of these requests were refused.

A question arises as to the cracks in the plaster walls and ceilings of plaintiff's offices. Although the existence and causes of these cracks were contested on the motion for injunction, on the trial it was positively testified that none of the cracks had appeared before defendant's alterations had begun, and this seems not contradicted by any witness at the trial. Plaintiff undertook in the original lease to redecorate his offices and the hallway up to the second landing. He testified that at that time he put the whole place in perfect condition.

The circumstances here resemble *Brande* v. *Grace* (154 Mass. 210), where also was an alleged encroachment on the rights of a second floor tenant of a building on Tremont street, Boston. While the proposed alterations changed the character of the occupation, as inconsistent with the tenant's right under their lease, in view of the completion of the alterations, and the failure of the court of first instance to allow an injunction, plaintiff's remedy was confined to compensation in damages. Here, under the right of renewal exercised and to be exercised, plaintiff can occupy till September 15, 1918.

The present lease conveyed a right of access, but this stairway, being for the common benefit of all other occupants of the building (another tenant was on the third floor), did not become a physical part of the demised property. (*Hamersmith* v. *Cohn*, 132 N. Y. Supp. 323; *Finkelstein* v. *Schlanowsky*, 76 Misc. Rep. 500; Underhill Landl. & Ten. § 281.) However, a tenant cannot be required to submit to have his leased property jacked up a height of twenty-eight inches, and have such structural damages as are here pointed out.

A court of equity should not now issue a mandatory injunction, after the work has been erected under an order of the Special Term. On the other hand, there seems no ground for an equitable offset of ultimate betterments against such actual impairment of occupation by raising the structure, holding it on jack-screws, cracking the walls and ceiling, and temporarily interrupting free and convenient access.

The findings should be modified by changing the one now numbered 9th, and partially to grant plaintiff's two requests, numbered X and XI, as to the injuries and cracks occasioned during these alterations, and then declare that plaintiff should be compensated for such breaches of the lessor's covenant for quiet enjoyment, even if, as completed, the alterations did enhance the value and beneficial enjoyment of the demised premises. For that purpose the cause should be remitted to Special Term to ascertain such damages, and then to render a money judgment therefor, with costs of this appeal to abide the event.

JENKS, P. J., THOMAS, MILLS, PUTNAM and BLACKMAR, JJ., concurred.

Findings modified and cause remitted to the Special Term to ascertain such damages as plaintiff may have sustained during alterations, by injuries, cracks and other damage, with costs of this appeal to abide the event.