WALTER F. WINCHESTER *vs.* FRANCES E. O'BRIEN & others.

Suffolk.    November 8, 1928. — January 23, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Landlord and Tenant,* Quiet enjoyment. *Nuisance.    Trespass.    Equity Jurisdiction,* To enjoin interference with rights of tenant, Damages. *Damages,* In suit in equity. *Equity Pleading and Practice,* Master: findings; Appeal.

A practising dentist with an established business in a certain building hired a suite of rooms therein for a term of years under a lease in writing.    Previous to the expiration of the lease, the landlord commenced to remodel the building extensively, whereby much noise was caused by pounding metal; access to the dentist's rooms was rendered more difficult because of the accumulation of rubbish in the hallway nearby; the rooms became dirty; the rugs and upholstered furniture therein were injured by dust; new plaster caused dampness which tarnished the dentist's instruments and other metal; and his work was interfered with by jarring of the building and by the removal of its hot water tank and the temporary shutting off of the electricity from time to time.    Because of such conditions, the dentist found it necessary to postpone treating certain patients and the receipts from his practice fell off somewhat.    All the work of remodelling was done outside his rooms and was done in a reasonable manner.    The dentist paid the rent to the end of the term and remained in possession, and brought a suit in equity against the landlord, alleging the foregoing facts in the bill, seeking to have the defendant enjoined from interfering with the plaintiff's quiet enjoyment of his rooms, and seeking damages.    Before the suit was heard by a master to whom it was referred, the lease had expired.    The master found such facts and

found a certain sum as the amount of damages to the plaintiff's property and a further sum as damages for loss of the plaintiff's business income. A final decree was entered ordering the defendant to pay both sums to the plaintiff. Upon an appeal by the defendant without a report of the evidence, it was *held*, that

(1) The acts done or authorized to be done by the defendant, as alleged in the bill and found by the master, constituted a continuing trespass and a nuisance causing injury to the plaintiff's property, business and rights as a tenant, and justifying relief in equity irrespective of whether they caused such an interference with his right of quiet enjoyment as to constitute an eviction;

(2) Although no relief by injunction could be granted after the expiration of the lease, the suit properly was retained for the assessment of damages;

(3) The evidence not having been reported, the findings by the master as to damages must stand;

(4) The final decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on June 21, 1927.

The bill, and material facts found by a master to whom the suit was referred, are described in the opinion. By order of *Cox*, J., there were entered an interlocutory decree confirming the master's report, and a final decree ordering the defendants to pay the plaintiff $650. The defendants appealed from the final decree. The evidence was not reported.

*D. A. Ellis*, (*S. M. Whalen* with him,) for the defendants.

*F. W. Fisher*, for the plaintiff.

SANDERSON, J. This is a bill in equity, filed June 21, 1927, to enjoin interference by the defendants with the plaintiff's use and enjoyment of his dental offices in the defendants' building and for damages. The defendants Lowe, Lipp and Holzman are the owners of the property standing in the name of the defendant O'Brien and will be referred to as the defendants. Injunctive relief was not granted, but a master was appointed to find the facts, and a decree was entered in favor of the plaintiff for $650 damages, and for costs, based upon the finding of the master that $150 was the damage to the plaintiff's property solely resulting from the acts of the defendants, and that $500 was the loss of his business income. The defendants appealed.

The lease from the defendants to the plaintiff, executed August 18, 1924, was "of the small suite consisting of two

(2) rooms and a bath room . . . in the . . . apartment house known as the 'Chesterfield'" at the corner of Massachusetts Avenue and Commonwealth Avenue, for a period of three years from October 1, 1924, and contained a covenant that the lessee would occupy the premises for his business as a practising dentist and that nothing should be done thereon which would be injurious to the comfort of other tenants of the building or its good reputation. At the time of the execution of the lease the plaintiff had been in occupation of the suite for more than fifteen years and had an established business there. The building consisted of six stories, each of the upper five being occupied by one tenant and the street floor by the plaintiff and a florist. The apartment leased to the plaintiff was quiet and suitable for the offices of a dentist by reason of its surroundings and location.

In May, 1927, the defendants, to make their building more profitable and in pursuance of a design to remodel it into an office building, began work involving the tearing out of most of the partitions above the first floor and installing new ones, removing and relaying floors, taking out old and installing new plumbing and fixtures, taking out an elevator near the plaintiff's suite and installing a larger one, thereby making the stairway smaller. The noise of pounding metal involved in removing the old and installing a new elevator was at times almost incessant. The hallway was occasionally obstructed with material although the janitor tried to keep it open. Access to the plaintiff's apartment was never entirely prevented, but it was often made inconvenient or uncomfortable. Large quantities of rubbish were thrown and accumulated in an enclosed areaway on which the plaintiff's windows open and much plastering was done in connection with these operations. The new plastering made the plaintiff's apartment damp, causing tarnishing of instruments, appliances and the metal work of chairs. The hot water tank in the building was taken out in May and from time to time the electricity in the apartment was shut off for periods of from fifteen minutes to half an hour and sometimes, when the plaintiff was in the midst of his work with a patient, temporary suspension of his work was made necessary. In

consequence of the reconstruction work the plaintiff's apartment became dirty and dusty and on various occasions during May and June everything in it was covered with dust, largely consisting of fine plaster which damaged upholstered furniture in his rooms; and dirt from the hallway was tramped into his rugs. The work of tearing out was accompanied by a great deal of noise. Removing the stairways caused the plaintiff and his patients discomfort and made the practice of his profession difficult. At times the work resulted in considerable jarring of the building which interfered materially with the plaintiff's work upon his patients. The noise and dirt were annoying to patients and the conditions rendered it difficult properly to receive them and to give them services and attention which they required. The situation was wearing upon the plaintiff personally and often resulted in his becoming unfit to continue his work, so that during the entire period, particularly during June and July, he frequently found it necessary to postpone treating certain patients until he could do so under more favorable conditions, and, as a consequence, the receipts from his business showed some falling off. Neither the defendants nor their workmen entered the plaintiff's apartment. All that was done took place outside the two rooms and bath leased to the plaintiff. The master found that there was no evidence that the work of remodelling was not carried on in a reasonable and proper manner.

The plaintiff paid his rent to the end of the term and meanwhile prosecuted this suit, not intending to waive his rights to hold the defendants for the damages asserted in his bill.

The "grant of any thing carries an implication, that the grantee shall have all that is necessary to the enjoyment of the grant, so far as the grantor has power to give it." *Salisbury* v. *Andrews,* 19 Pick. 250, 255. *Brande* v. *Grace,* 154 Mass. 210, 211. *Case* v. *Minot,* 158 Mass. 577, 584, 585. *Whitehouse* v. *Aiken,* 190 Mass. 468, 471. The lease carried with it an implication that the lessors would refrain from acts voluntarily undertaken which substantially "impair the character and value of the leased premises." *Brande* v. *Grace, supra,* page 212.

If a landlord authorizes acts to be done which cause substantial injury to the tenant in the peaceful enjoyment of the demised premises and such a result is the natural and probable consequence of the acts so authorized, the landlord is liable therefor.   *Case* v. *Minot, supra.*

The defendants contend that the bill is framed solely on a breach of an implied covenant for quiet enjoyment and cannot be maintained.   It alleges that the defendants, acting through their agents, contractors and workmen, are causing confusion, noise, dirt, and dust to exist in and about the building; that the continuation of the plaintiff's business depends substantially upon having his premises and the adjoining premises in a quiet, clean condition; that by reason of the acts of the defendants therein stated and the noise, confusion, dirt, and dust, created thereby, the prosecution of his profession has been interfered with and he has suffered serious and substantial injury therefrom; that unless the acts complained of are stopped he will suffer permanent and irreparable injury to his business.   It also alleges that at the time he was unable to obtain suitable quarters for his business and if they could be found his business would be seriously interfered with by moving.   Such allegations, if proved, would be ground for an injunction or a recovery in tort. *Case* v. *Minot, supra,* page 585.   They set out an injury to the plaintiff's property and business directly resulting from acts which could be found to create a nuisance, and from trespasses interfering with and disturbing the plaintiff's rights as a tenant, even if they were not sufficiently permanent in their character to be an eviction.   The bill is not based solely on breach of the implied covenant.   The same act may be a breach of the covenant for quiet enjoyment and also a wrong causing injury to the tenant for which injunctive relief might be sought or an action of tort would lie.

The plaintiff would have a right to maintain an action of trespass against the landlord for acts knowingly done, which interfere with the tenant's comfortable enjoyment of the premises, injure his property, and cause other damage to him, even though, because of the nature of the acts or of the intention with which they are done, they do not amount

to a constructive or partial eviction.  *Bartlett* v. *Farrington*, 120 Mass. 284, 285.  *Fuller* v. *Ruby*, 10 Gray, 285, 290.  He may have equitable relief by way of injunction to restrain threatened continuous or repeated trespasses or acts creating a nuisance, and if injunctive relief is denied the suit may be maintained for the assessment of damages.  *Nelson Theatre Co.* v. *Nelson*, 216 Mass. 30.  Even though the work was carried on in a reasonable and proper manner and entirely outside the rooms leased, injury was done to the property and appliances used in those rooms; there were interruptions of the electric and water service therein, the plaintiff's right of access was made more difficult, his property was injured, and he suffered a loss of income in business.  The finding that the work was done outside and was properly done is not a controlling circumstance.  *Case* v. *Minot, supra,* page 586.

It is evident from the facts found that there has been a substantial and continued interference with the plaintiff's beneficial enjoyment of the leased premises and appurtenant rights by the acts done or authorized by the defendants, and that when the bill was filed further interference was threatened.  Cases like *Callahan* v. *Goldman,* 216 Mass. 238, which hold that a tenant cannot maintain an action at law for breach of covenant for quiet enjoyment so long as he remains in possession, are not controlling in the present suit because of the facts found and the nature of the relief sought.  This suit falls within the class of cases where a tenant may remain in possession and seek relief against the landlord for wrongful interference with his rights as a tenant because the acts are wrongful invasions of such rights.  *Dexter* v. *Manley,* 4 Cush. 14.  *Fuller* v. *Ruby, supra.  Bartlett* v. *Farrington, supra. Brande* v. *Grace, supra.  Lynch* v. *Union Institution for Savings,* 158 Mass. 394.  *Case* v. *Minot,* 158 Mass. 577. *Epstein* v. *Dunbar,* 221 Mass. 579.  *Jenkins* v. *Jackson,* 40 Ch. Div. 71, 76, 77.

Under the state of things existing when the bill was filed, the defendants might properly have been restrained from proceeding with their proposed alterations in such a way as injuriously to affect the plaintiff's rights, but when the master's report was filed the lease had expired and as injunctive

relief could not then be granted the suit was properly retained for the assessment of damages. *Brande* v. *Grace,* 154 Mass. 210, 213. *Case* v. *Minot, supra. Epstein* v. *Dunbar, supra.* The question whether any or all acts of the landlord could be found to be a partial eviction need not be decided. See *Boston Veterinary Hospital* v. *Kiley,* 219 Mass. 533; *Lynch* v. *Union Institution for Savings,* 158 Mass. 394; *S. C.* 159 Mass. 306.

No objections were filed to the master's report and his findings on damages cannot be revised because the evidence is not reported. We find no error of law in the conclusions reached by him or by the judge.

*Decree affirmed with costs.*