## HINMAN et al. v. PACIFIC AIR TRANS-PORT.*

## SAME v. UNITED AIR LINES TRANSPORT CORPORATION.

### Nos. 7810, 7811.

Circuit Court of Appeals, Ninth Circuit.
July 20, 1936.

MATHEWS, Circuit Judge, dissenting..

*Rehearing denied Sept. 21, 1936.

756

Bruce Murchison and M. L. Clopton, both of Los Angeles, Cal., for appellants.

Newlin & Ashburn, Gurney E. Newlin, Paul Sandmeyer, and George W. Tackabury, all of Los Angeles, Cal., for appellees.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

From decrees sustaining motions to dismiss filed by defendants in two suits, appellants appeal and bring for review by this court the rights of a landowner in connection with the flight of aircraft above his land. Appellant filed one bill against Pacific Air Transport, an Oregon corporation, and another bill against United Air Lines Transport Corporation, a Delaware corporation, in each of which the allegations are nearly identical. Although two appeals are before the court, briefs filed discuss both cases, and therefore we will consider them together.

Appellants filed a first amended bill against Pacific Air Transport after a motion to dismiss the original bill had been sustained, and after a motion to dismiss the first amended bill had been sustained, they filed their second amended bill, which is the bill before this court. In the United Air Lines Transport Corporation case, the first amended bill is before this court, there having been filed an original bill, which was dismissed.

Appellants allege, in the bills under consideration, facts showing diversity of citizenship and that the amount in controversy exceeds $3,000 exclusive of interest and costs; that they are the owners and in possession of 72½ acres of real property in the city of Burbank, Los Angeles county, Cal., "together with a stratum of air-space superjacent to and overlying said tract * * * and extending upwards * * * to such an altitude as plaintiffs * * * may reasonably expect now or hereafter to utilize, use or occupy said airspace. Without limiting said altitude or defining the upward extent of said stratum of airspace or of plaintiff's ownership, utilization and possession . thereof, plaintiffs allege that they * * * may reasonably expect now and hereafter to utilize, use and occupy said airspace and each and every portion thereof to an altitude of not less than 150 feet above the surface of the land * * *". The reasonable value of the property is alleged to be in excess of $300,-000.

It is then alleged that defendants are engaged in the business of operating a commercial air line, and that at all times "after the month of May, 1929, defendants daily, repeatedly and upon numerous occasions have disturbed, invaded and trespassed upon the ownership and possession of plaintiffs' tract"; that at said times defendants have operated aircraft in, across, and through said airspace at altitudes less than 100 feet above the surface; that plaintiffs notified defendants to desist from trespassing on said airspace; and that defendants have disregarded said notice, unlawfully and against the will of plaintiffs, and continue and threaten to continue such trespasses.

It is further alleged: "That in operating aircraft as aforesaid, defendants followed and on substantially all occasions herein referred to have followed one of two courses, ways and paths in, across and through said airspace, which by reason of constant and repeated user by defendants have become and are well defined by constant user * * *." Thereafter the first of such courses, designated "A," is described with particularity with regard to the surface boundaries of plaintiffs' land; course "A" is averred to be 75 yards wide over the north side of plaintiffs' land the place of entry, the lowest boundary of the course above the surface to be 25 feet, and the highest boundary to be 175 feet above the surface. At the south side of plaintiffs' land, the course· is said to be 100 yards wide, the lowest boundary to be 5 feet above the surface, and the highest boundary to be 45 feet above the surface.

The second course is also described particularly, and although there is some difference in the width of the course, the height above the surface is the same as course A.

It is alleged that the direction of the breeze determines which course defendants

use on a particular occasion, and that defendants have used such courses since the time of the notice given them by plaintiffs, openly, notoriously, and under claim of right adverse to plaintiffs.

In the last paragraph it is alleged that the remedy at law is inadequate; that unless defendants are enjoined they will repeat the said trespasses and will impose a servitude upon plaintiffs' utilization, use, occupancy, and· enjoyment of the surface of their land to their irreparable injury; and that injunctive relief is necessary to prevent a multiplicity of legal proceedings.

In each bill under consideration, there is a second cause of action. The allegations of the first cause, except the last paragraph, are adopted in the second cause, and it is further alleged that the reasonable value of the utilization, use, and occupancy of said courses is $1,500 per month; that "by reason of defendants' invasion and disturbance of and trespass upon plaintiffs' ownership and possession of said airspace, plaintiffs have suffered damage" in the sum of $90,000.

The prayer asks an injunction restraining the operation of the aircraft through the airspace over plaintiffs' property and for $90,000 damages in each of the cases.

Appellees contend that it is settled law in California that the owner of land has no property rights in superjacent airspace, either by code enactments or by judicial decrees and that the ad coelum doctrine does not apply in California. We have examined the statutes of California, particularly California Civil Code, § 659 and § 829, as well as Grandona v. Lovdal, 78 Cal. 611, 21 P. 366, 12 Am.St.Rep. 121. Wood v. Moulton, 146 Cal. 317, 80 P. 92; and Kafka v. Bozio, 191 Cal. 746, 218 P. 753, 29 A.L.R. 833, but we find nothing therein to negative the ad coelum formula. Furthermore, if we should adopt this formula as being the law, there might be serious doubt as to whether a state statute could change it without running counter to the Fourteenth amendment to the Constitution of the United States. If we could accept and literally construe the ad coelum doctrine, it would simplify the solution of this case; however, we reject that doctrine. We think it is not the law, and that it never was the law.

This formula "from the center of the earth to the sky" was invented at some remote time in the past when the use of space above land actual or conceivable was confined to narrow limits, and simply meant that the owner of the land could use the overlying space to such an extent as he was able, and that no one could ever interfere with that use.

This formula was never taken literally, but was a figurative phrase to express the full and complete ownership of land and the right to whatever superjacent airspace was ·necessary or convenient to the enjoyment of the land.

In applying a rule of law, or construing a statute or constitutional provision, we cannot shut our eyes to common knowledge, the progress of civilization, or the experience of mankind. A literal construction of this formula will bring about an absurdity. The sky has no definite location. It is that which presents itself to the eye when looking upward; as we approach it, it recedes. There can be no ownership of infinity, nor can equity prevent a supposed violation of an abstract conception.

The appellants' case, then, rests upon the assumption that as owners of the soil they have an absolute and present title to all the space above the earth's surface, owned by them, to such a height as is, ·or may become, useful to the enjoyment of their land. This height, the appellants assert in the bill, is of indefinite distance, but not less than 150 feet.

If the appellants are correct in this premise, it would seem that they would have such a title to the airspace claimed, as an incident to their ownership of the land, that they could protect such a title as if it were an ordinary interest in real property. Let us then examine the appellants' premise. They do not seek to maintain that the ownership of the land actually extends by absolute and exclusive title upward to the sky and downward to the center of the earth. They recognize that the space claimed must have some use, either present or contemplated, and connected with the enjoyment of the land itself.

Title to the airspace unconnected with the use of land is inconceivable. Such a right has never been asserted. It is a thing not known to the law.

Since, therefore, appellants must confine their claim to 150 feet of the airspace above the land, to the use of the space as related to the enjoyment of their land, to what extent, then, is this use necessary to perfect their title to the airspace? Must the use be actual, as when the owner claims the space above the earth occupied by a

building constructed thereon; or does it suffice if appellants establish merely that they may reasonably expect to use the airspace now or at some indefinite future time?

This, then, is appellants' premise, and upon this proposition they rest their case. Such an inquiry was never pursued in the history of jurisprudence until the occasion is furnished by the common use of vehicles of the air.

■ We believe, and hold, that appellants' premise is unsound. The question presented is applied to a new status and little aid can be found in actual precedent. The solution is found in the application of elementary legal principles. The first and foremost of these principles is that the very essence and origin of the legal right of property is dominion over it. Property must have been reclaimed from the general mass of the earth, and it must be capable by its nature of exclusive possession. Without possession, no right in it can be maintained.

■ The air, like the sea, is by its nature incapable of private ownership, except in so far as one may actually use it. This principle was announced long ago by Justinian. It is in fact the basis upon which practically all of our so-called water codes are based.

■ We own so much of the space above the ground as we can occupy or make use of, in connection with the enjoyment of our land. This right is not fixed. It varies with our varying needs and is coextensive with them. The owner of land owns as much of the space above him as he uses, but only so long as he uses it. All that lies beyond belongs to the world.

■ When it is said that man owns, or may own, to the heavens, that merely means that no one can acquire a right to the space above him that will limit him in whatever use he can make of it as a part of his enjoyment of the land. To this extent his title to the air is paramount. No other person can acquire any title or exclusive right to any space above him.

Any use of such air or space by others which is injurious to his land, or which constitutes an actual interference with his possession or his beneficial use thereof, would be a trespass for which he would have remedy. But any claim of the landowner beyond this cannot find a precedent in law, nor support in reason.

It would be, and is, utterly impracticable and would lead to endless confusion, if the law should uphold attempts of landowners to stake out, or assert claims to definite, unused spaces in the air in order to protect some contemplated future use of it. Such a rule, if adopted, would constitute a departure never before attempted by mankind, and utterly at variance with the reason of the law. If such a rule were conceivable, how will courts protect the various landowners in their varying claims of portions of the sky? How enforce a right of ejectment or restitution? Such a rule is not necessary for the protection of the landowner in any right guaranteed him by the Constitution in the enjoyment of his property. If a right like this were recognized and upheld by the courts, it would cause confusion worse confounded. It is opposed to common sense and to all human experience.

We cannot shut our eyes to the practical result of legal recognition of the asserted claims of appellants herein, for it leads to a legal implication to the effect that any use of airspace above the surface owner of land, without his consent would be a trespass either by the operator of an airplane or a radio operator. We will not foist any such chimerical concept of property rights upon the jurisprudence of this country.

■ We now consider the allegation of the bill that appellees' airplanes, in landing, glide through the air, within a distance of less than 100 feet to the surface of appellants' land, or possibly to a distance within five feet thereof, at one end of his tract. This presents another question for discussion. Whether such close proximity to appellants' land may constitute an impairment of his full enjoyment of the same is a question of fact. If it does, he may be entitled to relief in a proper case.

Appellants are not entitled to injunctive relief upon the bill filed here, because no facts are alleged with respect to circumstances of appellants' use of the premises which will enable this court to infer that any actual or substantial damage will accrue from the acts of the appellees complained of.

The case differs from the usual case of enjoining a trespass. Ordinarily, if a trespass is committed upon land, the plaintiff is entitled to at least nominal damages without proving or alleging any actual damage. In the instant case, traversing the

airspace above appellants' land is not, of itself, a trespass at all, but it is a lawful act unless it is done under circumstances which will cause injury to appellants' possession.

Appellants do not, therefore, in their bill state a case of trespass, unless they allege a case of actual and substantial damage. The bill fails to do this. It merely draws a naked conclusion as to damages without facts or circumstances to support it. It follows that the complaint does not state a case for injunctive relief.

We should note appellants' contention that appellees' continuous use of the airspace in question may or will ripen into an easement.

In considering this particular question, it is necessary to consider just what right appellees are attempting to acquire. If the superincumbent airspace were merely space (speaking of space as a nonentity), it would be valueless to the appellees. In other words, if no air were present therein, appellees' planes could not navigate. The primary thing appellees are using would appear to be the air overlying appellants' land. It is generally held that an easement of or in the air may not be obtained by prescription.

It is said in 19 C.J. 903, § 85: "The English doctrine that an easement for light and air may be acquired by user or prescription has been very generally rejected in the United States." See, also, 1 Thompson on Real Property, p. 652, § 542; also, Case v. Minot, 158 Mass. 577, 33 N.E. 700, 22 L.R.A. 536, where many cases are cited in support of this rule. We therefore hold that it is not legally possible for appellees to obtain an easement by prescription through the airspace above appellants' land. Portsmouth Harbor Land & Hotel Co. v. United States, 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287, is not at variance with this holding, for in that case it is apparent that the use or occupancy of the airspace, if it can be so considered, was under such circumstances as amounted to a taking of the surface also. Such is not the case here.

It is necessary to note also appellants' further point, namely, that the second cause of action in the bill is for damages on account of trespass. No actual injury is alleged, other than the mere utilization of the airspace above appellants' land.

In Murray v. Pannaci (C.C.A.3) 130 F. 529, at page 530, it was said: "The judge applied to the case the familiar rule, settled by many decisions, that although a legal injury to a plaintiff is proven, yet if the extent of the injury is not shown, nor evidence given from which it can be inferred, nominal damages only can be recovered." This rule is supported by many decisions set out in 63 C.J. 1035, § 225. We hold under the allegations of the bill that in no event could appellant be entitled to more than nominal damages, and that being the case, an injunction was properly denied.

Appellants also complain in their third assignment of error as follows:

"That the above entitled court erred in making and causing to be entered that portion of said order as follows, to-wit:

"That 'in no case shall any amended cause of action be sufficient compliance with this order if same merely restates a case in trespass.'"

In Truckee River General Electric Co. v. Benner, 211 F. 79, 81, this court said: "It has uniformly been held in those [federal] courts that the allowance or refusal of leave to amend pleadings in actions at law is discretionary with the trial court, and that its action is not reviewable except in case of gross abuse of discretion."

Equity Rule 28 (28 U.S.C.A. following section 723) provides that: "After pleading filed by any defendant, plaintiff may amend only by consent of the defendant or leave of the court or judge."

In the instant case, leave was granted to appellants twice to amend their bill in one case, and once in the other. They failed in each of the bills to allege an injury by trespass which would be legally sufficient. Under such circumstances we are not prepared to say that the trial court abused its discretion.

The decree of the District Court is affirmed.

MATHEWS, Circuit Judge, dissents.