## Commonwealth ex rel. v. VonBestecki et ux.

*George W. Keitel*, Assistant Deputy Attorney General, and *Charles J. Margiotti*, Attorney General, for Commonwealth.

*Victor Braddock, E. M. Biddle, Jr., Caleb S. Brinton,* and *Harvey A. Gross*, for defendants.

Fox, J., March 15, 1937.—The substance of the bill filed is that one of the defendants, Marie Ross VonBestecki, then living, but now deceased, was the owner of a certain tract of land in Fairview Township, York County, occupied by her and her husband, the other above-named defendant, who is the executor of her last will and testament, who has continued to occupy the residence, and has the possession and control of the real estate involved in this case, and, as executor, is substituted for her in the bill; immediately adjoining the said tract of land is the

land of the Capital Landing Field Company, which operates an airport for the landing of airplanes on its lands; prior to the filing of the bill, a license had been issued by the Commonwealth to the said company to use its lands as a landing place for aeronauts and the air-traveling public, which flew, and at the time of filing of the bill was flying, in intrastate and interstate commerce; the said airway was being supervised by both the Commonwealth and the Federal Government; in connection with the said airway, the Commonwealth, for the protection of the air-traveling public, maintained light beacons along the said airway; the Federal Department of Commerce established and maintains on the said civil airway radio beacons for the safety and direction of aeronauts; the said airport was used as a regular landing station by airplanes carrying passengers or property for hire on regular schedules, and also by numerous other airplanes not on schedule; the Commonwealth had several airplanes stored in the hangars of the said airport, which planes the Commonwealth used in its official business regularly; on or about May 13, 1934, defendant Zdzislow VonBestecki caused to be erected on the land, then occupied by him and his wife, a skeleton tower of wood about eight feet square and extending into the air approximately 154 feet, which tower was invisible to aviators at night, and the guy wires supporting it were invisible to aeronauts in the daytime as well as at night; this tower fell to the ground, and defendants immediately erected a similar one at the same place about 90 feet in height, which was subsequently destroyed by fire; each of the said towers interfered with the use of the civil airway; defendant Zdzislow VonBestecki has threatened and continues to threaten to erect another such tower on the said land of defendant; each of said towers erected constituted a nuisance to aeronauts landing or taking off from the airport, and also constituted a public nuisance, and the erection of a new tower as threatened by defendant will constitute a public nuisance, a menace to and

dangerous to the lives, limbs and property of the traveling public using the civil airways of the Commonwealth.

The answer to the bill, in substance, is that the Capital Landing Field Company, by its agents, servants and patrons, trespassed upon the lands of defendant to such an extent as to deprive her of the reasonable use of the said lands owned by her, and that defendants erected the tower "to abate a nuisance created and caused by the unlawful, illegal, incessant, disturbing, noisome and dangerous low-flying over the tenant houses and tilled lands of the defendant Marie Ross VonBestecki, by the passenger planes and heavy planes entering and leaving the flying field of the airport."

A preliminary injunction was awarded and continued until final hearing which has been had.

### Findings of fact

1. Defendant Zdzislow VonBestecki, individually and as executor for his wife, Marie Ross VanBestecki, who died since the institution of these proceedings, resides on a tract of land in Fairview Township, York County, formerly owned by the said decedent, to the east of and immediately adjoining the tract of land known as the Harrisburg Airport.

2. The Harrisburg Airport was owned, operated, and maintained as an airport for the landing of airplanes by the Capital Landing Field Company, a corporation, at the time when plaintiff's bill was filed, and previously thereto, since the establishment of the airport in 1929. It is now owned by the Commonwealth.

3. The said airport has been continuously licensed by the Commonwealth of Pennsylvania as a landing place for aeronauts and the air-traveling public, flying both in intrastate and interstate commerce.

4. The said airport was improved with two runways, designed for the landing of airplanes, one running approximately east and west and the other northwest and

southeast, and meeting at a common point at the westerly end of the airport.

5. The said airport has been continuously located on four civil airways duly established by the Commonwealth of Pennsylvania and the Department of Commerce of the United States.

6. These civil airways are maintained and supervised by both the State and Federal Governments, and include light beacons, radio range, and emergency landing fields for the protection, safety, and direction of aeronauts and the air-traveling public, flying both in intrastate and interstate commerce along the said airways, and for the purpose of directing the air-traveling public into the airport.

7. The airport has been used continuously for the landing of aeronauts and the air-traveling public using the civil airways, and has been used for purposes of commercial flying, both interstate and intrastate.

8. At the time plaintiff's bill was filed, the Division of Aeronautics of the Department of Revenue of the Commonwealth of Pennsylvania maintained and operated three airplanes from the airport, which were stored therein.

9. May 13, 1934, defendant caused to be erected on the tract of land adjoining the airport a skeleton tower, made of wood, approximately eight feet square, and in the form of scaffolding, the tower extending into the air approximately 154 feet and being supported by numerous guy wires extending from the upper portion of the tower to the ground.

10. Shortly after the erection of this tower it fell to the ground, and defendant immediately erected a similar tower on the same location, 98 feet high, which was destroyed by fire on or about June 7, 1934.

11. Both towers were invisible to aeronauts at night, and the guy wires supporting them were invisible both at night and in the daytime.

12. Such towers were directly in the line or channel

along which airplanes were guided by radio beacons and light beacons, established and maintained as civil airways by the Federal and State Governments.

13. Such towers were directly in the path, on which, by reason of the prevailing winds, airplanes had to approach or leave the airport, and when such prevailing winds were blowing landing or taking off in any other direction was practically impossible for transport planes and unnecessarily hazardous for smaller planes.

14. The towers were not connected with any necessary or incidental use of defendants' property by them.

15. Said towers were erected for the sole purpose of interfering with the approach to and the take-off from the runways on the landing field by aeronauts and the air-traveling public, and with their flying along the civil airways, and with the admitted purpose of preventing the aeronauts and the air-traveling public from flying across defendant's property. The towers were so erected as to jeopardize and endanger the lives and property of aeronauts and the air-traveling public using the civil airways and the airport, and prevented the landing of airplanes with due regard to the safety of the pilots, passengers, and property contained therein.

16. The towers were such a continuing menace to the air-traveling public using the civil airways in landing in and taking off from the airport as to constitute a continuing public nuisance.

17. Defendant has threatened to erect a new tower, of a type similar to the ones heretofore erected by him, on the same location, so as to interfere with traffic on the said civil airways, and such similar obstructions would, likewise, constitute a public nuisance, resulting in probable injury to the persons and property of aeronauts and the air-traveling public using these civil airways.

### Discussion

The subject of aeronautics is somewhat new, but is rapidly progressing and expanding; it has become im-

portant in governmental affairs, commerce, and travel. The annihilation of space is by aviation more swift and successful than by any other method used by man. This changed and changing condition by aeroplane is necessarily bringing about changes in the law with respect to the right and use of real property formerly regarded by some as belonging to the land owner, as expressed by the formula in Latin, "Usque ad orcum usque ad coelum," literally translated, that is, through to the lower regions, through to the heavens, but more freely and commonly expressed "to the Heavens and to the centre of the earth."

In the case of Swetland et al. v. Curtiss Airports Corp. et al., 55 F.(2d) 201, the court, at page 203, said:

"He (the landowner) has a dominant right of occupancy for purposes incident to his use and enjoyment of the surface, and there may be such a continuous and permanent use of the lower stratum (of air) which he may reasonably expect to use or occupy himself as to impose a servitude upon his use and enjoyment of the surface. See Portsmouth Co. v. United States, 260 U. S. 327, 43 S. Ct. 135, 67 L. Ed. 287. As to the upper stratum which he may not reasonably expect to occupy, he has no right, it seems to us, except to prevent the use of it by others to the extent of an unreasonable interference with his complete enjoyment of the surface. His remedy for this latter use, we think, is an action for nuisance and not trespass. We cannot fix a definite and unvarying height below which the surface owner may reasonably expect to occupy the air space for himself. That height is to be determined upon the particular facts of each case. It is sufficient for this case that the flying of the defendants over the plaintiff's property was not within the zone of such expected use. We think the question is unaffected by the regulation promulgated by the Department of Commerce, under the Air Commerce Act of 1926 (49 USCA §171 et seq.), and adopted by the State of Ohio, requiring aeronauts to fly in rural sections at a height not less than 500 feet above the surface, for

in our view that regulation does not determine the rights of the surface owner, either as to trespass or nuisance."

In Hinman et al. v. Pacific Air Transport, 84 F. (2d) 755, it is held (syllabus) :

"Air is by its nature incapable of private ownership except in so far as one may actually use it.

"Landowner owns so much of space above ground as he can occupy or make use of in connection with the enjoyment of his land, and such right varies with his needs and is coextensive with them.

"Generally, no one can acquire right to space above land that will limit landowner in whatever use he can make of space as part of his enjoyment of land, and any injurious use of such space which constitutes an actual interference with possession or beneficial use of land would be trespass."

See also Thrasher v. City of Atlanta et al., 99 A. L. R. 158, 173 S. E. 817; Gay et al. v. Taylor et al., 19 D. & C. 31, 41.

However, whatever reasonable rights in the law there may now be for aeronauts, as passing over the lands of another, they must be reasonably exercised, so that the owner of the land will not be disturbed in or deprived of the reasonable use, conduct and enjoyment of his lands and property. If this right of the land owner is violated by aviators he has his remedy either at law or in equity.

The Commonwealth has proceeded against defendant on the averment that defendant threatens to erect a tower similar to ones previously erected, but now out of existence, which will be dangerous to the lives, limbs, and property of the traveling public using said civil airway, and will constitute a public nuisance.

A nuisance is defined as "that which annoys and disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable to him": Tuckachinsky v. Lehigh & Wilkes-Barre Coal Co., 199 Pa. 515, 518.

There is evidence in the case that might justify the conclusion that the use of the airway was so unreasonably annoying and disturbing defendants as to amount to a private nuisance, for which, if so found, he could have his remedy, as we have above stated. But that question is not before us. Defendants have not seen fit to adopt such authorized and orderly procedure. They have erected towers which we have found were dangerous to the traveling public by air, and the survivor of defendants threatens to erect like ones in the future. The towers previously erected, we have found, were public nuisances, and the towers he threatens to erect in the future will be the same.

A nuisance is common or public where it affects the rights enjoyed by citizens as part of the public, that is, the rights to which every citizen is entitled. A private nuisance is one that affects a single individual or a determinate number of persons in the enjoyment of some private right not common to the public: 46 C. J. 646, 647. Hydraulic Works Co. v. Orr et ux., 83 Pa. 332, was a case of an erection of a platform along a private alley, to be raised and lowered for the convenience of the owner in receiving and shipping goods, and not securely fastened, which fell, and a child six years old, while at play, was killed. The court, at page 336, said:

"Such, too, is the humanity of the law, that one may not justifiably, or even excusably, place a dangerous pitfall, a wolf-trap, or a spring-gun, purposely to catch and injure even wilful trespassers poaching upon his grounds. The common feeling of mankind, guided by the second branch of the great law of love, and the common sense of jurors, must be left, in such a case, to pronounce upon the facts."

In 1 Wharton on Criminal Law (12th ed.) 812, it is said:

"A landowner has no right to plant spring guns by which ordinary trespassers may be wounded; and if he does so, and death ensues, he is responsible for the con-

sequences. If such weapons be erected inconsiderately the killing of a mere heedless trespasser on an open country is manslaughter; if the weapons be erected maliciously, the offense is murder."

In the case of State v. Moore, 31 Conn. 479, 83 Am. Dec. 159, it is said (syllabus):

"Though setting of spring guns be justifiable in itself, they will be held to constitute a nuisance if they cause actual danger to passers-by in the street. But the annoyance to the public must be of a real and substantial nature." And in a note thereto, citing Bishop on Criminal Law, secs. 853-856, it is said: "if the implement is one likely to produce death to a human being, the owner of property cannot so place it, except where, under the same circumstances, if present, he would be authorized, on attempt to commit the offense, to take the life of the offender."

A number of other cases bearing upon this subject are therein cited.

In the case of Simpson v. State, 59 Ala. 1, 31 Am. Rep. 1, 10, it is held:

"The mechanical agency, is sensitive only to the touch—it is without mercy, or discretion, its violence falls on whatever comes in contact with it. Whatever may not be done directly can not be done by circuity and indirection. If an owner, by means of spring-guns or other mischievous engines planted on his premises, capable of causing death or of inflicting great bodily harm on ordinary trespassers, does cause death, he is guilty of criminal homicide," and if dangerous to the public it is indictable as a nuisance.

And this may be so with invisible guy wires at day or night or the tower at night. The tower is likely to distract the attention of a pilot, causing him to give more attention to the tower and inadequate concentration to his airway.

In the case of Krocker et al. v. Westmoreland Planing Mill Co., 274 Pa. 143, 147, the Supreme Court said:

"The restraining of nuisances is a well recognized branch of equity jurisdiction where the facts are clear and the rights of the complainants not doubtful: See Prendergast et al. v. Walls et al., 257 Pa. 547; Eckels v. Weibley, 232 Pa. 547; Wilson v. Cather, 214 Pa. 3; Piro v. Shipley, 211 Pa. 36; Evans v. Fertilizing Co., Ltd., 160 Pa. 209; Pennsylvania Lead Co's. Appeal, 96 Pa. 116, 124. Of course, in a doubtful case an injunction should not issue until the rights of the parties are settled by an action at law. The instant case was properly one for a chancellor, owing to the continuing nature of the nuisance and the number of injured parties."

The jurisdiction of this court is challenged, on the theory that it is a proceeding in rem and the land of defendant is situate in York County. We disagree with this contention; it is a proceeding by the Commonwealth through its Attorney General to abate a public nuisance, and this is done under the police protection of the Commonwealth and under the authority of the Act of April 7, 1870, P. L. 57, under which this court has been given wide jurisdiction. We have jurisdiction.

### Conclusions of law

1. The erection of towers, and the resultant menace to the public traveling on the civil airways, constituted a public nuisance, the threatened recurrence of which may be enjoined by a court of equity.

2. The fact that the flying over defendant's property may have annoyed defendant and interfered with the use of his property, amounting at most to a trespass or a private nuisance, is not a defense in an action to enjoin the creation of a public nuisance, and, therefore, all testimony tending to establish this defense is inadmissible.

3. Any defense based on the justification of the erection of the towers as the abatement of a trespass or private nuisance is not properly before the court, because it has not been adequately pleaded as an affirmative defense under new matter in the answer, and, because of defend-

ant's failure to do so and the absence of a reply thereto, such defense is not at issue; therefore, all testimony tending to establish this defense is inadmissible.

4. The fact that since plaintiff's bill was filed the Commonwealth of Pennsylvania has acquired and now owns and operates the airport as a governmental function may be considered as of the time of the final decree of this court.

5. The Commonwealth of Pennsylvania, both as the sovereign representing the traveling public using the civil airways, and as the owner and operator of the Harrisburg Airport in the performance of a governmental function, is entitled to a permanent injunction restraining the erection of another tower or similar obstruction, in accordance with the prayer of plaintiff's bill.

## Decree nisi

And now, March 15, 1937, upon due consideration, it is hereby ordered, adjudged, and decreed that defendant Zdzislow VonBestecki, and Zdzislow VonBestecki, executor of the last will and testament of Marie Ross VonBestecki, deceased, be and are hereby permanently enjoined from erecting, causing, or permitting to be erected any tower or structure of similar nature to the towers described in the testimony for the purpose of interfering with aerial travel or traffic on the land formerly owned by said Marie Ross VonBestecki, described in the bill, adjoining the airport mentioned in the bill, formerly owned by the Capital Landing Feld Company, now owned by the Commonwealth, which will interfere with the aeronautic approach or departure from the said airport on or along the civil airways of the Commonwealth or interfere in any way, except as provided in law or equity, with travel or traffic in the air along the said civil airways of the Commonwealth.

Defendants to pay the costs.