The **PALISADES CITIZENS ASSOCIATION, INC., et al., Petitioners,**

v.

**CIVIL AERONAUTICS BOARD,**
**Respondent,**

**Washington Airways, Inc., Intervenor.**

**No. 21422.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 18, 1969.

Decided Sept. 12, 1969.

---

Mr. James T. Sharkey, Washington, D. C., with whom Mr. H. Don Cummings, Washington, D. C., was on the brief, for petitioners.

Mr. Warren L. Sharfman, Associate Gen. Counsel, Litigation and Legislation, Civil Aeronautics Board, with whom Messrs. Joseph B. Goldman, Gen. Counsel, O. D. Ozment, Deputy Gen. Counsel, Burton S. Kolko and Miss Alexandra Polyzoides, Attys., Civil Aeronautics Board, were on the brief, for respondent.

Mr. Arthur I. Cantor, Atty., Department of Justice, for the Department of

Justice. Asst. Atty. Gen. Turner and Mr. Howard E. Shapiro, Atty., Department of Justice, were on the memorandum for the Department of Justice.

Messrs. William Allen, Washington, D. C., Richard D. Copaken, and Howard C. Westwood, Washington, D. C., entered appearances for intervenor.

Before McGOWAN, TAMM and ROBB, Circuit Judges.

TAMM, Circuit Judge.

A proceeding to inquire into the public necessity of a helicopter service in and between the metropolitan areas of Washington and Baltimore was begun by order of the Civil Aeronautics Board on August 29, 1966. Applications for certificates of public convenience and necessity were filed and processed. In due course a prehearing conference was held to properly frame the issues. Just prior to this conference, several "Concerned Citizens," the Palisades Citizens Association, Inc., and a group known as the Committee Against National (hereinafter collectively known as "Citizens" or "petitioners") filed petitions for leave to intervene in the proceedings.[1] Their papers alleged a keen interest in the reduction of noise, air pollution and safety hazards attendant to the air traffic above their property. They requested permission to intervene formally in the determination pending before the Board either as formal parties pursuant to Rule 15 of the Board's Rules of Practice, 14 C.F.R. § 302.15 (1968)[2] or as interested persons under Rule 14 of the Rules, 14 C.F.R. § 302.14 (1968).[3] They asserted, basically, that inquiry into these areas of public inconvenience and hazard was most relevant to the Board's statutory

study as set out in 49 U.S.C. § 1371(d) (1) (1964),[4] and, as such, were areas best presented by those most significantly affected.

On June 26, 1967, prior to acting on the petitions for intervention, the hearing examiner held the final prehearing conference in which all petitioners participated. At this time the Citizens requested that the applicants be made to demonstrate, at the hearing, the facts respecting the degree of environmental impact flowing from their proposed service. This request was denied in the examiner's prehearing report of June 28, 1967. However, the report did indicate that petitioners would be permitted to appear and testify at the hearing relative to their interests under either Rule 14 or 15 intervention (J.A. 54). Exceptions were taken to this report and denied. Thereafter, on July 28, 1967, the examiner ruled "that the appearance of petitioners as formal parties [under Rule 15] will unduly broaden the issues and delay the proceedings, whereas their interests may be adequately advanced under the provisions of Rule 14(b) of the Rules of Practice." (J.A. 68.)

The Citizens appealed the denial of formal intervention to the Board contending that the merits of their "impact" argument demanded attention and that denial of formal intervention was error. The Board, in an opinion and order issued September 19, 1967 (with two members dissenting), held that although the consideration of the environmental impact question need not be undertaken at that time, it would uphold the examiner respecting his ruling on intervention (J.A. 8). The Board pointed out that the Federal Aviation Act of 1958,

---

1. The petitions of the Citizens for leave to intervene can be found at J.A. 38, 44 and 46.

2. For relevant portions of Rule 15 *see* text, *infra*, at 193.

3. For relevant portions of Rule 14 *see* text, *infra*, at 192.

4. 49 U.S.C. § 1371(d)(1) (1964) provides in pertinent part that

The Board shall issue a certificate

authorizing the whole * * * transportation covered by the application, if it finds that the applicant is fit, willing and able to perform such transportation properly, and to conform to the provisions of this chapter * * * and that such transportation is required by the public convenience and necessity; otherwise the application shall be denied.

as amended, 49 U.S.C. § 1371(c) (1964), did not confer upon members of the public a "right" to intervene in these proceedings but only permitted interested parties to file opposition to the grant of certificates. On the other hand, the Board indicated that control of procedural questions of intervention was governed by Rules 14 and 15 of its Rules of Practice. After an analysis of both the opportunities and duties under each of these rules the Board reasoned "that petitioners' interests are not so substantial as to require or warrant intervention by them, and that Rule 14(b) participation will be adequate." (J.A. 9.) The Board concluded that

> [i]f each [petitioner] were allowed to intervene and participate as a full party, proceedings which are already burdened by numerous parties would become nearly uncontrollable. Rule 14(b) participation strikes the practical balance between the general public's interest in viable administrative proceedings and the private interests of individual members of the general public. This is especially so where, as here, the representation of the Department of Transportation in addition to the applicants' participation through Rule 14, may be expected to amply articulate the broad public interest in environmental impact from which the applicants special interest are derived [sic].

(J.A. 11.) The Citizens appeal. We affirm.

In affirming the Board's order in this case let us first caution the Board that questions relating to environmental impact of proposed services upon persons and property lying below the routes are substantial and clearly relevant to the Board's certification inquiry. Section 1302 of Title 49 of the Code requires the Board, in determining the public convenience and necessity, to consider "among other things"

>  (a) The encouragement and development of an air-transportation sys-

tem properly adapted to the present and future needs of the * * * domestic commerce of the United States * * *

>  (b) The regulation of air transportation in such manner as to recognize and preserve the inherent advantages of, assure the highest degree of safety in, and foster sound economic conditions in, such transportation * * * [and]

>  (f) The promotion, encouragement, and development of civil aeronautics.[5]

Actually the spirit of the first two quoted provisions is summed up in paragraph (f)—the "promotion, encouragement, and development of civil aeronautics." That is truly the three-foot mark on the yardstick of public interest and a basic measure of the Board's responsibilities. No agency entrusted with determinations of public convenience and necessity is an island. It fits within a national system of regulatory control of industry. Its decisions affect not only its primary interest groups but also the general public at large. For example, were the Civil Aeronautics Board to award a route certificate to a carrier which employs aircraft powered by chlorine gas due to its assertion of cheaper rates to the air traveler, the impact of such an award would not only affect the competing carriers but also the air-breathing public below. Regardless of the efficiency of the air service, the deadly pollution must nullify the grant. To say that the environmental impact of that service is not a proper consideration of the Board in its certification hearing is folly.

Since the arrival of the airplane as a convenient mode of travel there has been a continuing controversy over who has primary use of airspace—the airline or the property owner. It has been held that one owns "so much of the space above the ground as [one] can occupy or make use of, in connection

---

5. 49 U.S.C. §§ 1302(a), (b) and (f) (1964).

with the enjoyment of [his] land." Hinman v. Pacific Air Transport, 84 F.2d 755, 758 (9th Cir. 1936), cert. denied, 300 U.S. 655, 57 S.Ct. 431, 81 L.Ed. 865 (1937). It is true that Congress, by statute, has declared "exclusive national sovereignty in the airspace of the United States * * *" 49 U.S.C. § 1508 (1964) and has defined navigable airspace as all airspace "above the minimum altitudes of flight prescribed by regulations * * *" 49 U.S.C. § 1301 (1964). However, "[r]egardless of any congressional limitations, the land owner, as an incident to his ownership, has a claim to the superadjacent airspace" [6] to the extent that a reasonable use of his land involves such space. Accordingly, an "invasion of the 'superadjacent airspace' will often 'affect the use of the surface land itself.' [United States v. Causby] 328 U.S. at 265 [66 S.Ct. at 1068, 90 L.Ed. 1206]." Griggs v. Allegheny County, 369 U.S. 84, 89, 82 S.Ct. 531, 533, 7 L.Ed.2d 585 (1962). Moreover, where that invasion is destructive of the landowner's right to possess and use his land, it is compensable either through private tort actions or under the fifth amendment where the use, by the government, amounts to a "taking." *See* United States v. Causby, 328 U.S. 256, 265, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) and Griggs v. Allegheny County, *supra*. It follows, therefore, that the public interest in the "promotion, encouragement, and development of civil aeronautics" demands consideration by the Board of the extent to which a grant will affect persons and property on the ground below the route. A certificate to a carrier (or the institution of a service) which would substantially increase the intensity of noise, degree of air pollution or the probability of accidents would be contrary to the spirit and the letter of the Federal Aviation Act. The Civil Aeronautics Board has been given the scales of public interest. It must effect a balance. This is so even though we recognize that certain other governmental departments have been given the ex-

plicit authority to consider the various aspects of environmental impact specifically. It is true that the Department of Transportation and the Federal Aviation Administration have been given the duty of prescribing standards relative to aircraft noise abatement. *See* Department of Transportation Act, 49 U.S. C. § 1653(a) (Supp. IV, 1965–1968) and Federal Aviation Act of 1958, as amended, 49 U.S.C. § 1431 (Supp. IV, 1965–1968). We are aware, also, that the Department of Health, Education and Welfare has been given the duty of determining, by study and report, the air pollution effects of jet and conventional aircraft engine emissions, 42 U.S.C. § 1857f–6d(b) (Supp. IV, 1965–1968). Finally, we realize that a complex set of safety regulations has been promulgated by the Federal Aviation Administration in an effort to carry out its statutory duty of establishing a safe air transportation system pursuant to 49 U.S.C. §§ 1421–1430 (1964). These determinations, however, are merely narrow studies of the "species" of the "genus" environmental impact. There still exists the "family" of public interest in which each of these species belong. As such, the Board must account for them.

■ Having found that questions of environmental impact are proper "public interest" questions in the Board's certification inquiry, we turn to the determination of whether denial of formal intervention to petitioners was error. We look first to the statute. Section 1371 (c) of Title 49 of the Code provides that upon the filing of applications for certificates under section (b), "[a]ny interested person may file with the Board a protest or memorandum of opposition to or in support of * * * a certificate." In implementing this statute through regulation the Board has provided for two kinds of participation—informal and formal. Informal participation is achieved under 14 C.F.R. § 302.14(b) (1968) which provides, in pertinent part, that

6. United States v. 15,909 Acres, 176 F.Supp. 447, 448 (S.D.Cal.1958).

Any person * * * *may* appear at any hearing * * * and present any evidence that is relevant to the issues. * * * [S]uch person *may* also cross-examine witnesses directly. Such person *may* also present to the examiner a written statement on the issues * * *. (Emphasis added.)

Formal intervention, on the other hand, is governed by 14 C.F.R. § 302.15 which provides, in part, that

(a) * * * Any person whose intervention will be conducive to the ends of justice and will not unduly delay the conduct of such proceeding *may* be permitted to intervene. (Emphasis added.)

From the use of the word "may" in these sections it is apparent that intervention is discretionary. In exercising that discretion the Board is to take into account, "among other things," the following:

(1) The nature of the petitioner's right under the statute to be made a party of the proceeding; (2) the nature * * * of the property, financial or other interest of the petitioner; (3) the effect of the order which may be entered in the proceeding on petitioner's interest; (4) the availability of other means whereby the petitioner's interest may be protected; (5) the extent to which petitioner's interest will be represented by existing parties; (6) the extent to which petitioner's participation may reasonably be expected to assist in the development of a sound record; and (7) the extent to which participation of the petition-

er will broaden the issue or delay the proceeding.

14 C.F.R. § 302.15(b) (1968). Since the filing of the briefs in this case, the Board has effected the hearing, initial decision and final order. Our review of the proceedings and the resultant opinions discloses that the petitioners were given the opportunity to participate in the proceedings by the presentation of exhibits, the cross-examination of witnesses and in oral argument before the examiner. Furthermore, the Department of Transportation, a formal intervenor, advanced its position on environmental impact through testimony and submittal of exhibits. The Board weighed the impact question against the need for the service and found the latter consideration persuasive.[7]

In appraising the Board's determination in light of the statute and regulations, we hold that denial of formal intervention to petitioners was reasonable in view of the full record. In any event the denial amounted to a reduction of petitioners' status in form only, rather than in substance, for that which might have been accomplished under Rule 15 was, in fact, effected through Rule 14.

In closing we wish only to note that Board proceedings entail determinations of the many-faceted public interest. It is for the Board to determine who will best serve to amplify the facts pertinent to that interest and unless there is evidence of clear error, the Board's order will stand. The statute, the rules and the proceedings below have been carried out reasonably, and we therefore affirm.

Affirmed.

---

7. The final opinion of the Board appears in the Joint Appendix of the parties in the case of National Capital Airlines v. CAB, 136 U.S.App.D.C. ——, 419 F.2d 668 (relative to that part of this case dealing with the decision of the Board to grant a license to one carrier rather than another). There, beginning on page 446 and continuing for several pages, a discussion of the contentions of the Citizens is carefully undertaken with each pertinent point raised, discussed and disposed of in a fashion that we deem reasonable.